IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JEFFERY ALLYN,<br><br>    Plaintiff,<br><br>v.<br><br>ERIC K. SHINSEKI, Secretary of Veterans Affairs,<br><br>    Defendant. | Case No. 13-100<br><br><br><br>COMPLAINT AND JURY DEMAND |

COMES NOW the Plaintiff, by and through his attorneys, and for his cause of action hereby states the following:

## INTRODUCTION

1. This is an employment discrimination action under the Americans with Disabilities Act, challenging Defendant's disability discrimination toward the Plaintiff.

2. Plaintiff Jeffery Allyn is a resident of Polk County, Iowa.

3. Defendant Eric K. Shinseki is the Secretary of Veterans Affairs.

4. The acts about which Plaintiff complains occurred in Polk County, Iowa.

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1346 and 28 U.S.C. Section 1331.

6. Venue is appropriate in this District under U.S.C. Section 1391(b) and (c).

## PROCEDURAL REQUIREMENTS

7. On approximately September 22, 2011, within 45 days of the most recent act of discrimination, Plaintiff initiated contact with the Office of Resolution Management (ORM) regarding his complaints of disability discrimination against Defendant.

1

8. On approximately December 21, 2011, Plaintiff received a Notice of Right to File Discrimination Complaint and filed a Formal EEO Complaint against Defendant on January 4, 2012.

9. On approximately February 9, 2012, Plaintiff's EEO Complaint was accepted and subsequently investigated.

10. On July 9, 2012, Plaintiff requested a Final Agency Determination.

11. On January 29, 2013, less than 90 days prior to the filing of this Complaint, the Department of Veterans Affairs issued a Final Agency Determination with respect to Plaintiff's charges of discrimination against Defendant.

## FACTUAL BACKGROUND

12. Dr. Jeffery Allyn began working for Defendant in approximately January 2009, as a physician at the Veteran's Administration Hospital in Des Moines.

13. Dr. Allyn reported to Mental Health Service Line Director Dr. Gregory Chowanec.

14. Since approximately June 2009, Dr. Allyn has suffered from major depressive disorder and post traumatic stress disorder.  Both conditions were brought on by the traumatic death of Dr. Allyn's wife in June 2009, the day after the birth of their son.

15. Dr. Allyn returned to work after his wife's death on September 9, 2009.

16. Although Dr. Allyn's psychiatrist recommended that he only resume work part-time, Dr. Chowanec refused to allow it.

17. Dr. Allyn reluctantly returned to working a full-time schedule.

18. Because of his major depressive order and post-traumatic stress disorder, Dr. Allyn had difficulty managing his full-time schedule.

19. His major depressive disorder and post traumatic stress disorder caused Dr. Allyn to have difficulty sleeping because he would often experience nightmares that substantially limited his ability to sleep. In turn, this lack of sleep substantially limited Dr. Allyn's ability to care for himself, think, and concentrate.

20. As a result, Dr. Allyn was occasionally late or absent from work.

21. Dr. Allyn's November 2009 performance review reflected the demands under which he struggled but acknowledged that Dr. Allyn managed to do well despite the extra challenges he faced as a result of his disabilities.

22. Throughout the following year, Dr. Allyn's depression worsened and he became increasingly overwhelmed.

23. In November 2010, Dr. Allyn met with Dr. Chowanec to explain how poorly he believed he was managing and to ask for help.

24. Dr. Chowanec responded, "Let us know if there's anything we can do."

25. Dr. Allyn asked if he could have a lighter schedule on Thursdays to give him time to work on documenting patient encounters.

26. Dr. Chowanec immediately responded that he could not entertain such a request.

27. Although Dr. Chowanec continued to state, "Let us know if there's anything we can do," he failed to engage in any meaningful dialogue or indicate any genuine willingness to do <u>anything</u> to accommodate Dr. Allyn's disabilities.

28. In Dr. Allyn's November 2010 performance review, Dr. Chowanec and Medical Director Dr. David Bethel rated Dr. Allyn's "personal qualities" as "low satisfactory," blaming his tardiness and absences from work that were resulting from Defendant's failure to accommodate his disabilities.

29. During the performance review meeting, Dr. Allyn discussed his profound depression, frequent nightmares, and inability to sleep.

30. Dr. Chowanec responded that Dr. Allyn's occasional tardiness and absences "reflected poorly on the service line."

31. Dr. Allyn replied that he felt fortunate to get to work at all some days.

32. Dr. Chowanec coldly reiterated, "We have to have you here at 8:00 a.m."

33. Dr. Allyn formally protested the low rating on his performance review, pointing out that his depression was not a deficit in his "personal qualities." Human Resources ultimately forced Dr. Chowanec to upgrade the evaluation.

34. Almost all Dr. Allyn's delays and absences were the result of "serious health conditions" protected by the Family Medical Leave Act.

35. At the suggestion of Human Resources Director Greg Smith, Dr. Allyn completed a formal application for FMLA leave in November 2010.

36. Although Dr. Allyn began taking leave one day per week, he actually spent that day working hard to get caught up on paperwork.

37. Dr. Allyn occasionally used his one day of leave per week to rest.

38. This intermittent FMLA leave would not have been necessary if the VA had reasonably accommodated Dr. Allyn's disabilities.

39. On February 15, 2011, Dr. Allyn told Chief of Staff Dr. Fredrick Bahls about Dr. Chowanec's ongoing refusal even to consider accommodating his disabilities and asked Dr. Bahls for help.

40. Although Dr. Bahls offered his personal support, he refused to provide any reasonable accommodations to assist Dr. Allyn in his struggle to work with his disabilities.

41. Dr. Chowanec continued to refuse to make any accommodations to account for Dr. Allyn's disabilities.

42. On the contrary, Dr. Chowanec made Dr. Allyn's work environment <u>more</u> stressful and demanding as a result of his disabilities and repeated requests for reasonable accommodations.

43. For instance, Defendant often double booked Dr. Allyn with two patients in one time slot and scheduled him to see patients throughout the noon hour.

44. When Dr. Allyn again despaired about this treatment to Dr. Chowanec in March 2011, Dr. Chowanec smirked and told Dr. Allyn that his "production" was that of a "three-day-a-week psychiatrist."

45. Dr. Chowanec insisted that the VA had been "very accommodating" to Dr Allyn by "allowing" him to exercise his federally protected right to use FMLA leave.

46. On April 15, 2011, Dr. Allyn submitted a formal complaint to Greg Smith and Dr. Bahls, reporting the discrimination, harassment, and retaliation he continued to experience.

47. Defendant did not respond to Dr. Allyn's complaint.

48. On April 21, 2011, Dr. Chowanec sent Dr. Allyn a letter threatening administrative action against Dr. Allyn if his tardiness and encounter completion did not improve.

49. In April and May 2011, Dr. Chowanec sent Dr. Allyn "Clinic Utilization" reports, which criticized Dr. Allyn for his "missed opportunities" that resulted from his use of FMLA leave.

50. On approximately April 13, 2011, Dr. Chowanec criticized Dr. Allyn in front of coworkers for these "missed opportunities" resulting from his use of FMLA leave.

51. On approximately August 8, 2011, Dr. Chowanec sent Dr. Allyn an email criticizing him for not completing medical records in a timely manner.

52. In the email, Dr. Chowanec asked if there were any extenuating circumstances that could explain why it was difficult for Dr. Allyn to complete medical records on time.

53. At the time the email was sent, Dr. Chowanec was well aware of Dr. Allyn's disabilities and Defendant's refusal to lift a finger to reasonably accommodate the disabilities. Dr. Chowanec also knew that Dr. Allyn's schedule was often overbooked, making it nearly impossible for him to complete medical records in a timely manner.

54. Dr. Allyn forwarded Dr. Chowanec's email on to Dr. Bahls and again asked Dr. Bahls for reasonable accommodations.

55. Dr. Bahls told Dr. Allyn he was on his way out of town but would ask Human Resources for an update.

56. Dr. Allyn told Dr. Bahls he would be cancelling his clinics scheduled for August 9, 2011, to allow him to catch up on paperwork.

57. On approximately August 9, 2011, Dr. Allyn arrived to work to find that his afternoon appointments had not been rescheduled as he had directed.

58. Clinic Director Linda Kramer left Dr. Allyn a voicemail informing him that she had overridden his directive to cancel clinics that day because it would "negatively impact veteran care."

59. Later that evening, Dr. Allyn met with Ms. Kramer to discuss the fact that he was increasingly overwhelmed by his pressing workload and his fear that he was becoming ineffective in assisting his patients with their own depressions and post-traumatic stress disorders.

6

60. Ms. Kramer told Dr. Allyn that, although it was important for patient notes and records to be completed, it did not warrant not seeing patients to complete the work since the computer system would ignore data that was not timely entered.

61. During the meeting with Ms. Kramer, Dr. Allyn explained the events surrounding his wife's death, the depth of his depression, and his ongoing symptoms of post-traumatic stress disorder. Dr. Allyn tried to convey the desperation he felt in trying to manage his overwhelming caseload. Dr. Allyn told Ms. Kramer he was fearful that if nothing changed, he would continue to be unable to meet the expectations of managing patients and completing records.

62. Defendant retaliated against Dr. Allyn for needing FMLA leave by overbooking him when he returned.

63. For example, during approximately the week of August 22, 2011, Dr. Allyn used three days of FMLA leave. When Dr. Allyn returned to work on approximately August 29, 2011, he faced a schedule of appointments starting at 8:00 a.m. and ending at 4:30 p.m., and including an appointment scheduled at 12:30 p.m. On approximately August 30, 2011, Dr. Allyn was scheduled to see patients from 8:00 a.m. to 12:00 p.m. and 1:00 p.m. to 4:00 p.m.

64. When other providers in the mental health service line took sick leave or required unexpected time off, their schedules were not extra full when they returned.

65. Overbooking Dr. Allyn when he returned from his FMLA leave caused Dr. Allyn to need even *more* FMLA leave.

66. On approximately August 30, 2011, Greg Smith sent Dr. Allyn an email stating he only had sixteen hours of FMLA leave remaining.

67. In the email, Mr. Smith wrote that despite Dr. Allyn's numerous pleas to Dr. Chowanec and others for help, Dr. Chowanec did not believe that Dr. Allyn had ever asked for "reasonable accommodations."

68. Dr. Allyn responded by reminding Mr. Smith that he had repeatedly asked Dr. Chowanec for help and told him that he was overwhelmed.

69. Mr. Smith told Dr. Allyn he would send him some information about his "options" in light of the fact that his FMLA leave was exhausted.

70. On approximately August 30, 2011, Dr. Allyn learned from Mr. Smith for the first time that there was a "reasonable accommodation committee" at the VA before which concerns such as his could be taken.

71. At no point during the eighteen previous months in which Dr. Allyn struggled with medical disabilities did anyone tell Dr. Allyn that such a committee existed, despite repeatedly begging his service line chief, clinical director, and the chief medical officer for reasonable accommodations.

72. On approximately September, 19, 2011, Dr. Allyn submitted a formal written request for reasonable accommodations to Greg Smith. Dr. Allyn asked that on one day per week, Defendant not schedule him to see patients so that time could be used to finish medical record documentation, review charts for consults, and complete consultations. Dr. Allyn also requested that the VA abide by several specific parameters when scheduling his appointments.

73. For almost two months, Defendant failed to respond.

74. In the meantime, due to the ongoing discrimination, harassment, and retaliation which were exacerbating Dr. Allyn's disabilities, he was forced to take a leave of absence from work beginning October 24, 2011.

75. During this leave of absence, Dr. Allyn underwent intensive trauma therapy.

76. Dr. Allyn's psychiatrists and psychologists concluded that the events of the past two years had exacerbated his major depressive disorder and post traumatic stress disorder, and recommended that he no longer work at the VA.

77. Dr. Allyn was constructively discharged on February 28, 2012.

78. Greg Smith was an employee and agent of Defendant, acting at all material times within the scope of his employment and agency.

79. Linda Kramer was an employee and agent of Defendant, acting at all material times within the scope of her employment and agency.

80. Dr. Gregory Chowanec was an employee and agent of Defendant, acting at all material times within the scope of his employment and agency.

81. Dr. Frederick Bahls was an employee and agent of Defendant, acting at all material times within the scope of his employment and agency.

82. Dr. David Bethel was an employee and agent of Defendant, acting at all material times within the scope of his employment and agency.

**COUNT I**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

83. Plaintiff repleads paragraphs 1 through 82 as if fully set forth herein.

84. Plaintiff's major depressive disorder and post-traumatic stress disorder substantially interfered with Plaintiff's ability to sleep, think, and concentrate.

85. Plaintiff's major depressive disorder and post traumatic stress disorder also substantially interfere with the normal functioning of Plaintiff's brain and neurological system.

86. Defendant is and was at all times material an "employer" within the meaning of the ADA.

87. Plaintiff was an "employee" of Defendant within the meaning of the ADA.

88. Plaintiff was "a qualified individual with a disability" within the meaning of the ADA.

89. Plaintiff was able to perform the essential functions of his job with or without reasonable accommodation.

90. Defendant failed to accommodate Plaintiff's disabilities in violation of the ADA.

91. Defendant failed to engage in good faith in an interactive process with Plaintiff to assist him in accommodating his disabilities in violation of the ADA.

92. Defendant discriminated against Plaintiff and constructively discharged him.

93. Plaintiff's disabilities were a motivating factor in the discrimination and constructive discharge.

94. Plaintiff complained to Defendant about the discrimination he experienced and otherwise opposed practices made unlawful by the ADA.

95. Defendant retaliated against Plaintiff because of his requests for accommodation, as well as his complaints and opposition to discrimination.

96. As a result of Defendant's illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, fear, anguish, humiliation, intimidation, stress, hopelessness, lost enjoyment of life; medical expenses, lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for prejudgment and postjudgment interest, for attorney's fees and expenses, for the costs of this action, for appropriate equitable

and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the ADA.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury.

                                  FIEDLER & TIMMER, P.L.L.C.

                                  */s/ Emily McCarty*
                                Paige Fiedler AT0002496
                                paige@employmentlawiowa.com
                                Emily McCarty AT0010147
                                emily@employmentlawiowa.com
                                2900 – 100th Street, Suite 209
                                Urbandale, Iowa  50322
                                Telephone:  (515) 254-1999
                                Fax:  (515) 254-9923
                                ATTORNEYS FOR PLAINTIFF